STATE OF CONNECTICUT *v.* PEDRO GRULLON
(13453)

PETERS, C. J., CALLAHAN, GLASS, HULL and SANTANIELLO, JS.

Argued May 5—decision released July 18, 1989

*Michael B. Dashjian,* special public defender, for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Warren Maxwell,* assistant state's attorney, for the appellee (state).

PETERS, C. J. This appeal raises three principal issues: the validity of a conviction based upon a unilateral conspiracy, the admissibility of a warrantless wiretap procured with the consent of one of the parties, and the constitutionality of a statutory exemption for drug dependent persons. A jury found the defendant, Pedro Grullon, guilty on one count of possession of cocaine with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a) and one count of conspiracy to possess and transport cocaine with intent to sell in violation of General Statutes §§ 21a-277 (a) and 53a-48 (a). The trial court thereupon sentenced him to a term of imprisonment of thirteen years for each count, to run concurrently. The defendant appealed this judgment to the Appellate Court. We transferred the appeal to ourselves pursuant to Practice Book § 4023. We find error and remand for a new trial on the conspiracy count.

The jury could reasonably have found the following. The defendant's half brother, Edwin Caraballo (the brother), was arrested by the Manchester police on January 12, 1986, on drug charges unrelated to the defendant. The brother, while in police custody, agreed to cooperate with the police and made two calls to the defendant, which he permitted the police to record. The brother arranged for the defendant and a third party to bring one pound of cocaine from New York to the brother in Manchester. These conversations were in Spanish. In subsequent unrecorded telephone calls forwarded to the brother in the police facility where he was being held, the brother learned that, to implement the drug delivery, the defendant and another Hispanic

male planned to arrive in Hartford on a Trailways bus scheduled to depart New York at about 5:30 p.m. on January 14 and, on arrival, to take a taxi cab to the brother's home at 17 Hazel Street in Manchester, where they would deliver the cocaine. The brother relayed this information and a description of the defendant to the police.

Detective Joseph Morrissey, a Manchester police officer, was stationed at the Trailways bus station when the bus arrived. He saw the defendant, whom he recognized from the brother's description, and another man, Francisco Lora, go to a pay phone and heard the defendant make a telephone call in Spanish, which Morrissey could not understand. He then saw the defendant give the telephone to Lora, who also spoke in Spanish. The only recognizable word that Morrissey heard Lora say was "Hazel." The defendant and Lora then took a taxi to 17 Hazel Street in Manchester where the police searched the defendant's shoulder bag, discovered eighteen ounces of cocaine, and arrested him and Lora.

On appeal, the defendant claims that the trial court erred in: (1) charging the jury that the defendant could be guilty of conspiracy with his brother; (2) admitting into evidence the transcripts of telephone conversations between the defendant and his brother; (3) charging the jury as to entrapment; (4) admitting hearsay evidence; and (5) holding that General Statutes § 21a-278 does not violate the defendant's constitutional right to equal protection. We find error in the trial court's instructions on the conspiracy charge and no error on the other claims.

I

The defendant makes a tripartite claim of error with regard to the trial court's charge to the jury on the conspiracy count. He contends that: (a) a defendant cannot

be guilty of conspiracy pursuant to General Statutes § 53a-48[1] unless the state has proven beyond a reasonable doubt that he conspired with another who is not a police informant or agent, because the statute requires that there be an agreement between the coconspirators; (b) the court's instructions erroneously permitted the jury to convict him on this count on the theory of his having conspired with his brother, who was acting as a police informant; and (c) the court erroneously denied his motion for acquittal of the conspiracy charge, because there was insufficient evidence to support a finding of his having conspired with any person other than his brother. We agree with the first two contentions, but not with the third.

## A

Our examination of the definition of the crime of conspiracy in § 53a-48 convinces us that the legislature has determined that conspiracy requires a showing that two or more coconspirators intended to engage in or cause conduct that constitutes a crime. Under our statute, therefore, a defendant cannot be guilty of conspiracy if the only other member of the alleged conspiracy lacks any criminal intent. Accordingly, we reject the state's argument to the contrary, that the requirements of § 53a-48 are satisfied by proof that the defendant himself intended to engage in criminal conduct without any coconspirator sharing his criminal intent.

Our interpretation of § 53a-48 is informed by the "well defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature." *State* v. *Blasko*, 202 Conn.

---

[1] "[General Statutes] Sec. 53a-48. CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

541, 553, 522 A.2d 753 (1987); see also *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). In ascertaining that intent, "[i]f the words are clear and unambiguous, 'it is assumed that [they] express the intention of the legislature'; *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981); and we need inquire no further." *State* v. *Kozlowski,* 199 Conn. 667, 674, 509 A.2d 20 (1986); see also 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 48.01. The words of the statute are to be given "their ordinary meaning unless their context dictates otherwise." *Nichols* v. *Warren,* 209 Conn. 191, 196, 550 A.2d 309 (1988). "Any latent ambiguity in the statutory language itself is normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve." *Capalbo* v. *Planning & Zoning Board of Appeals,* 208 Conn. 480, 486, 547 A.2d 528 (1988); *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988). Further, "[p]enal statutes are to be construed strictly . . . and not extended by implication to create liability that the legislature did not purport to create." *State* v. *Hufford,* 205 Conn. 386, 392, 533 A.2d 866 (1987); see *State* v. *Dupree,* 196 Conn. 655, 660, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985); *State* v. *DeMartin,* 171 Conn. 524, 544, 370 A.2d 1038 (1976).

Section 53a-48 (a) states that a person is guilty of conspiracy if he "agrees with one or more persons to engage in or cause the performance of [conduct constituting a crime]." The dispositive issue, therefore, is the meaning to be attributed to the word "agree" as used in § 53a-48. "Agree" is defined by Black's Law Dictionary (5th Ed. 1979) as: "To concur; come into harmony; give mutual assent; unite in mental action; exchange promises; make an agreement; arrange; to settle," and by Webster's New Collegiate Dictionary (1974) as "admit, concede; to settle upon by common

consent." That ordinary meaning supports the defendant's contention that the statute contemplates a criminal intent on the part of those with whom the defendant is alleged to have conspired.

The state maintains, however, that we should not give "agree" its ordinary meaning, but should instead interpret it to include situations in which only one party actually intends that the illegal activity occur. The state urges this construction on the ground that our legislature modeled § 53a-48 upon the New York conspiracy statute, N.Y. Penal Law § 105, which the courts of New York have interpreted as encompassing a unilateral conspiracy theory. *People* v. *Schwimmer,* 66 App. Div. 2d 91, 411 N.Y.S.2d 922 (1978), aff'd, 47 N.Y.2d 1004, 394 N.E.2d 288 (1979). Although much of the language of the New York and Connecticut statutes is virtually identical,[2] the New York statute contains a section, not contained in the Connecticut statute, that specifically states that it is not a defense to a conspiracy charge that the defendant's coconspirator lacked the mental state necessary to himself be guilty of conspiracy.[3] In light of this significant difference between New York's governing statute and § 53a-48, we conclude that New York cases do not establish reliable precedents for the construction of our statute.

In describing the constituent elements of conspiracy, our own cases have regularly described conspiracy in

---

[2] New York Penal Law (McKinney) § 105.05 provides in relevant part: "[A] person is guilty of conspiracy . . . when, with the intent that conduct constituting: 1. a felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct . . . . "

[3] New York Penal Law (McKinney) § 105.30 provides: "It is no defense to a prosecution for conspiracy that, owing to criminal irresponsibility or other legal incapacity or exemption, or to unawareness of the criminal nature of the agreement or the object conduct or of the defendant's criminal purpose or to other factors precluding the mental state required for the commission of conspiracy or the object crime, one or more of the defendant's co-conspirators could not be guilty of conspiracy or the object crime."

bilateral terms. " ' "To establish the crime of conspiracy under [§ 53a-48], the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime . . . ." ' ' " *State* v. *Rouleau,* 204 Conn. 240, 258, 528 A.2d 343 (1987); *State* v. *DeMatteo,* 186 Conn. 696, 707, 443 A.2d 915 (1982); *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975); see *State* v. *Beccia,* 199 Conn. 1, 3, 505 A.2d 683 (1986). " '[T]he essence of [conspiracy] is an agreement to commit an unlawful act. . . . The prohibition of conspiracy is directed not at the unlawful object, but at the process of agreeing to pursue that object.' " *State* v. *Beccia,* supra, 3, quoting *United States* v. *Simms,* 508 F. Sup. 1188, 1196 (W.D. La. 1980).

A bilateral construction of our conspiracy statute finds support in similar decisions by the federal courts, which hold that one cannot conspire with an informant as a matter of law. *Montgomery* v. *United States,* 853 F.2d 83, 85 (2d Cir. 1988); *United States* v. *Escobar de Bright,* 742 F.2d 1196, 1198–1200 (9th Cir. 1984); *United States* v. *Chase,* 372 F.2d 453, 459 (4th Cir.), cert. denied, 387 U.S. 907, 87 S. Ct. 1688, 18 L. Ed. 2d 626 (1967); see also *United States* v. *Moss,* 591 F.2d 428, 434 n.8 (8th Cir. 1979); *Sears* v. *United States,* 343 F.2d 139, 142 (5th Cir. 1965).[4] Under federal law, a conspiracy requires an agreement between two or more people "which arguably requires some form of a 'meet-

---

· [4] Title 18 of the United States Code, § 371 provides: "CONSPIRACY TO COMMIT OFFENSE OR TO DEFRAUD UNITED STATES. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

ing of minds.' " *United States* v. *Escobar de Bright,* supra, 1199, quoting *Krulewitch* v. *United States,* 336 U.S. 440, 448, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Jackson, J., concurring). "There is neither a true agreement nor a meeting of minds when an individual 'conspires' to violate the law with only one other person and that person is a government agent." *United States* v. *Escobar de Bright,* supra. "In short, the formal requirements of the crime of conspiracy have not been met unless an individual conspires with at least one bona fide co-conspirator." Id. "[T]he *Sears* [v. *United States*] rule [that a defendant cannot be found guilty of conspiring with an informant] responds to the same concern that underlies the entrapment defense: the legitimate law enforcement function of crime prevention 'does not include the manufacturing of crime.' *Sherman* v. *United States,* 356 U.S. 369, 372, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958) . . . . Allowing a government agent to form a conspiracy with only one other party would create the potential for law enforcement officers to 'manufacture' conspiracies when none would exist absent the government's presence." Id., 1200.

We conclude, therefore, that the defendant is correct in his assertion that the crime of conspiracy under § 53a-48 requires the state to prove, beyond a reasonable doubt, that he and another person agreed to engage in conduct constituting a crime. Unless the state proved that some other person, with culpable intent, agreed with the defendant to violate the law, the defendant was entitled to acquittal on this count.[5]

## B

The defendant maintains that the trial court erroneously instructed the jury that it could find the defend-

---

[5] The defendant moved for acquittal, following the state's presentation of its case, on the ground that the state had not proven a prima facie case of conspiracy.

ant guilty of conspiracy on the basis of an agreement between the defendant and his brother. Because this alleged coconspirator was concededly acting as a police agent at the time when he called the defendant, the defendant claims that this misleading instruction requires at least reversal of his conviction on this count. We agree.

To determine whether an error in the charge to the jury exists, we review the entire charge to determine if, "taken as a whole, the charge adequately guided the jury to a correct verdict." *State* v. *Fleming,* 198 Conn. 255, 268–69, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); see *State* v. *Hines,* 187 Conn. 199, 206, 445 A.2d 314 (1982); *State* v. *Williams,* 182 Conn. 262, 268, 438 A.2d 80 (1980). " ' "In appeals not involving a constitutional question the court must determine whether it is reasonably probable that the jury [was] misled" ' "; *State* v. *Avis,* 209 Conn. 290, 305, 551 A.2d 26 (1988); *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Williams,* supra; but " 'in appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled.' " *State* v. *Corchado,* supra; *State* v. *Williams,* supra; see also *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967). A failure to provide adequate instructions on the elements of a crime, because of its potential for violation of the defendant's due process rights; *State* v. *Fleming,* supra, 270; see *State* v. *Williams,* supra, 268–69; invokes the "reasonably possible" standard of review. In this case, because the alleged error relates to the elements of the crime charged, reversal of the defendant's conviction and a new trial are mandated if, in the context of the charge as a whole, it is reasonably possible that the jury was misled. *State* v. *Fleming,* supra, 269; *State* v. *Sinclair,*

197 Conn. 574, 581, 500 A.2d 539 (1985); *State* v. *Kurvin*, 186 Conn. 555, 558, 442 A.2d 1327 (1982).

The court, in its instructions on conspiracy,[6] discussed the telephone conversations between the defendant and his brother and then stated "it will be for you to review all the evidence to determine whether in fact the State has proved the existence of the requisite agreement." The court informed the jury that the state was also claiming that a third party, Lora, was a member of the conspiracy. The court did not, however, inform the jury that it could not find the defendant guilty of conspiracy unless both the defendant and at least one co-conspirator intended to engage in or cause the commission of a crime.

Viewing the charge as a whole, we conclude that it is reasonably possible that the trial court misled the jury to believe that it could find the defendant guilty of conspiracy with the brother, a police informant, to transport cocaine. We conclude, therefore, that the court's charge to the jury did not fulfill its mandate to " 'be accurate in law, adapted to the issues and ade-

---

[6] In its instructions to the jury, the trial court stated: "The State, as to this count, has offered, I believe, evidence of two telephone conversations, which have been transcribed and admitted into evidence as Exhibits A and B, which he claims constituted an agreement between Edwin Caraballo and the defendant to possess and transport a narcotic substance, namely cocaine, from New York City to Manchester, Connecticut, but it will be for you to review all the evidence to determine whether in fact the State has proved the existence of the requisite agreement. . . .

"It's my recollection, on the basis of the State's evidence and claims, that one Francisco [Lora], who it appears was the person who was with the defendant at the Hartford bus terminal, is also claimed to have been a member of that conspiracy or a party to that agreement. . . .

"To summarize then, in order to find the defendant guilty of conspiracy as charged in the second count, you must conclude—you must find that the State has proved the following elements beyond a reasonable doubt. First, that the defendant entered into an agreement with one or more other persons to engage in or cause the commission of a crime, namely the transportation and possession of cocaine."

quate to guide the jury in reaching a correct verdict' ''; *State* v. *Williams,* supra, 269; *Berniere* v. *Kripps,* 157 Conn. 356, 358, 254 A.2d 496 (1969); and that, therefore, the jury was possibly misled. Consequently, the defendant is entitled to a new trial on this count.

## C

The defendant contends further that he should be acquitted on the conspiracy charge because the state has failed to prove his involvement in any legally sufficient conspiracy. He argues that the state introduced insufficient evidence to prove, beyond a reasonable doubt, that he conspired with the other alleged co-conspirator, Lora. We disagree.

In determining whether the evidence was sufficient to sustain a verdict, we must inquire whether a rational trier of fact could reasonably have concluded, from the facts established and from inferences reasonably drawn, that the defendant is guilty beyond a reasonable doubt. *State* v. *Avis,* supra, 308–309; *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Scielzo,* 190 Conn. 191, 197–98, 460 A.2d 951 (1983). Viewing the evidence in the light most favorable to sustaining the verdict, as we must; *State* v. *Avis,* supra, 309; *State* v. *Williams,* 205 Conn. 456, 468, 534 A.2d 230 (1987); we conclude that there was sufficient evidence to support a finding that the defendant conspired with Lora. The state presented evidence from which the jury could reasonably have inferred that Lora was the owner of the drugs and that Lora came to Connecticut for the purpose of transporting the drugs to the defendant's brother. The jury's verdict did not indicate whether the defendant had been found to have conspired with his brother, with Lora or with both of them. Although a retrial is required because the jury may have been misled into erroneously finding the defendant

guilty of conspiracy with a police agent, on this record the defendant is not entitled to an outright acquittal on the conspiracy count.

## II

The defendant next contends that the trial court erred in admitting into evidence the transcripts of his telephone conversations with the brother, which he had moved to suppress prior to trial, because (a) the wiretap constituted an unreasonable search, and (b) there is no exception to the Electronic Surveillance Act (ESA), General Statutes § 54-41a et seq., for wiretaps with the consent of one party. We are unpersuaded.

## A

The defendant contends that the wiretap of his first conversation with the brother was an unreasonable search because it was "executed without any cause to believe a crime had been or was being committed" and was, therefore, prohibited by the United States constitution.[7] Although the fourth amendment to the United States constitution protects conversations from illegal seizure; *Katz* v. *United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Berger* v. *United States,* 388 U.S. 41, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967); *State* v. *DeMartin,* 171 Conn. 524, 534, 370 A.2d 1038 (1976); the United States Supreme Court has explicitly held that this protection does not extend to wiretaps conducted with the consent of one of the par-

[7] The defendant also contends that the wiretap violated his rights pursuant to the Connecticut constitution. He has, however, " ' "proffered no argument that the rights afforded to him by the federal and state constitutions are in any way distinguishable with respect to the substantive issue that he has raised." ' " *State* v. *Chung,* 202 Conn. 39, 45 n.7, 519 A.2d 1175 (1987); *State* v. *Toste,* 198 Conn. 573, 576 n.3, 504 A.2d 1036 (1986); *State* v. *Braxton,* 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985). We decline, therefore, to undertake any independent analysis of this claim.

ties to the conversation. "Neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants." *United States* v. *Caceres,* 440 U.S. 741, 744, 99 S. Ct. 1465, 59 L. Ed. 2d 733 (1979); see also *United States* v. *White,* 401 U.S. 745, 752, 91 S. Ct. 1122, 28 L. Ed. 2d 453, cert. denied, 402 U.S. 990, 91 S. Ct. 1643, 29 L. Ed. 2d 156 (1971) (plurality opinion). Just as an undercover police agent, without having first obtained a warrant, may take notes reciting a conversation with a defendant, so the agent may simultaneously record the conversation or transmit it to recording equipment. *United States* v. *Caceres,* supra, 750–51; *United States* v. *White,* supra, 751. " 'If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.' " *United States* v. *Caceres,* supra, 751; *United States* v. *White,* supra; see *State* v. *DeMartin,* supra, 537–38. Consistent with this constitutional analysis, consensual recording is specifically excluded from wiretaps protected by federal law.[8]

It is undisputed that, in this case, the defendant's brother, one party to the conversation, consented to the wiretap. Accordingly, the wiretap did not constitute an unreasonable search for the purposes of the fourth amendment.

---

[8] Title 18 of the United States Code, § 2511 (2) (c) provides: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is party to the communication or one of the parties to the communication has given prior consent to such interception."

## B

The defendant's contention that the ESA required that the transcripts be excluded from evidence is equally unavailing. This court adressed the admissibility of consensual wiretaps in *State* v. *DeMartin,* supra, and held that consensual wiretaps were admissible into evidence without a wiretap order. Id., 543–44. In *State* v. *DeMartin,* the court concluded that the ESA was enacted to respond to decisions of the United States Supreme Court including *Katz* v. *United States,* supra, and *Berger* v. *United States,* supra, and held that neither the constitution nor the ESA, properly construed, prohibited an undercover police officer from taping a telephone conversation with a defendant.

The defendant argues that *State* v. *DeMartin* is not controlling because it applied to a "different statutory scheme for wiretaps than that which currently exists." The defendant is correct that, subsequent to *State* v. *DeMartin,* the legislature replaced the penal statute governing wiretaps, General Statutes § 53-140, with § 53a-187.[9] The legislature has not, however, significantly amended § 54-41a et seq., the ESA, the statute that explicitly governs the admissibility of recordings or transcripts of wiretaps.

We conclude that the substitution of § 53a-187 for § 53-140 does not provide a sufficient basis for distin-

[9] General Statutes § 53a-187 provides in relevant part: "DEFINITIONS. (a) . . . (2) 'Mechanical overhearing of a conversation' means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment. (3) 'Unlawfully' means not specifically authorized by law.

"(b) This section and sections 53a-188 and 53a-189 shall not apply to wiretapping by criminal law enforcement officials in the lawful performance of their duties and do not affect the admissibility of evidence in any proceedings other than a prosecution for eavesdropping or tampering with private communications."

guishing *State* v. *DeMartin*. In *State* v. *DeMartin*, supra, 544 n.13, we noted that § 53-140 had been repealed in 1971 and that "the prohibitions of [that] statute were carried over into [§§ 53a-187 through 53a-189]." In discussing the new statute, we assumed, in effect, that its enactment would not alter the rules governing the admissibility of tape recordings or transcripts of consensual wiretaps.[10] Further, § 53a-187 explicitly limits "[m]echanical overhearing of a conversation" to overhearing or recording "without the consent of at least one party thereto" and its legislative history reflects a legislative awareness and acquiescence in a construction of § 53-140 permitting wiretaps with the consent of one party.[11] 14 S. Proc., Pt. 2, 1971 Sess., p. 877, remarks of Senator Joseph J. Fauliso.

Accordingly, although we agree with the defendant that the ESA represents "the legislature's comprehensive efforts to protect fully the privacy values which the operation of the statute implicates"; *State* v. *Ross*, 194 Conn. 447, 459, 481 A.2d 730 (1984); we conclude that "[t]he competing interests of the community in effective law enforcement and of the individual in his privacy are, in a unique way, drawn into question by police wiretapping. Clearly, our statutes are aimed at

[10] The court stated: "The words 'wiretapping' and 'mechanical overhearing of a conversation' are defined to make it clear that the eavesdropping occurs only when there is an 'intentional overhearing or recording of a conversation' which is carried out 'by a person other than a sender or receiver thereof' and 'without the consent' of at least one party thereto. General Statutes § 53a-187 (a) (1), (2). Thus, it is clear that one may tape one's own conversation, whether one is the caller or the one being called. As an added precaution, the legislature made it clear that General Statutes §§ 53a-187 [through] 53a-189 'shall not apply to wiretapping by criminal law enforcement officials in the lawful performance of their duties and does not affect the admissibility of evidence in any proceedings other than a prosecution for eavesdropping or tampering with private communications.' General Statutes § 53a-187 (b)." *State* v. *DeMartin*, 171 Conn. 524, 544 n.13, 370 A.2d 1038 (1976).

[11] A bill that would have required the consent of both parties, House Bill No. 8913 (1971), was proposed but not enacted.

balancing these competing interests." Id., 458. The defendant's arguments that the legislature intended that the ESA apply to consensual wiretaps are unpersuasive.

## III

The defendant next claims that the trial court erred in several respects in its instructions to the jury regarding entrapment.[12] He failed to except at trial to the portion of the charge he now challenges, but claims a right to appellate review under *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973). Such review is not warranted.

"Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." Id., 69. Such "exceptional circumstances" arise only "where a new constitutional right not readily forseeable has arisen between the time of trial and appeal" or "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Id., 70. The defendant does not assert that any relevant new constitutional right has arisen. Further, the defense of entrapment "is not of constitutional dimension." *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); see *State* v. *Preyer,* 198 Conn. 190, 197, 502 A.2d 858 (1985). Accordingly, we decline to review these claims.

---

[12] The defendant contends that the trial court should have determined whether there was sufficient evidence for the jury to find the absence of any of the elements required to demonstrate entrapment before submitting entrapment to the jury, should then have submitted to the jury only the elements upon which there was sufficient evidence and should have instructed the jury that if the state failed to prove the absence of any element of entrapment, that element was established as matter of law. He further contends that the trial court erred in not instructing the jury that it could reject any element of the defense only unanimously.

## IV

The defendant also contends that the trial court erred in admitting hearsay evidence, which he claims was highly prejudicial. Although the defendant did not object to this evidence at trial, he now claims that admitting this evidence was plain error. The state concedes that the testimony at issue was hearsay, but contends that the trial court did not commit plain error in admitting that testimony. We agree with the state.

"We invoke the power to review a ruling of the trial court as plain error only in extraordinary circumstances 'where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *State* v. *Miller,* 202 Conn. 463, 483, 522 A.2d 249 (1987), quoting *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). That is not this case.

The defendant challenges the testimony by one of the police officers, Detective Morrissey, that the brother had said that the defendant was one of his cocaine sources and that the defendant had given him a telephone number to use to arrange the cocaine purchase.[13] The brother had previously testified that he had telephoned the defendant because the defendant could obtain a large quantity of cocaine for him in a short

---

[13] Detective Joseph Morrisey testified:

"Q. And what did you ask [the brother]?

"A. We discussed sources of cocaine that he had been buying from.

"Q. And did he mention a name?

"A. Yes, at some point, he did.

"Q. What name?

"A. The name of his half-brother, Pedro Grullon.

"Q. And did he tell you that he had purchased from Pedro before?

"A. Yes, he had.

"Q. Did he state that Pedro was his regular supplier?

"A. No, he didn't state that it was his regular supplier.

"Q. But he had done it before?

time. In addition, it had been previously established that the brother had the defendant's telephone number. We cannot characterize as plain error the admission by the trial court, without objection by either party, of evidence that may have been reliable and that, because it restated previously admitted testimony, may not have been prejudicial. *State* v. *Miller,* supra. We therefore decline to review further the admission of the hearsay testimony in question.

## V

The defendant's final claim is that General Statutes § 21a-278[14] violates his constitutional right to equal protection. He alleges that by prosecuting him pursuant to § 21a-278, which applies only to defendants who are not drug-dependent and imposes a mandatory minimum sentence, rather than General Statutes § 21a-277[15] the state has punished him more severely for his status as a person who is not drug-dependent. He also contends

"A. Yes. . . .

"Q. And did he have a phone number for Pedro?

"A. Yes, he did. . . .

"Q. And what had Pedro said to him, regarding that number?

"A. He stated that if he had to get in touch with him, to arrange for a purchase of cocaine, that this was a number that he could use."

[14] General Statutes § 21a-278 (a) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell . . . substances containing an aggregate weight of one ounce or more of . . . cocaine . . . and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment."

[15] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell . . . a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

that the prosecutor's ability to prosecute him pursuant to either of two statutes for one act is impermissible. We are not persuaded.

" 'Under traditional equal protection principles, a State retains broad discretion to classify [conduct as criminal] as long as its classification has a reasonable basis.' " *State* v. *Delgado,* 161 Conn. 536, 549–50, 290 A.2d 338 (1971), vacated and remanded for resentencing, 408 U.S. 940, 92 S. Ct. 2879, 33 L. Ed. 2d 764 (1972) (not unreasonable to divide convicted persons into classifications according to heinousness of offenses committed), quoting *Graham* v. *Richardson,* 403 U.S. 365, 371, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971).[16] " '[W]here there is some natural and substantial difference germane to the subject and purposes of the legislation, there is no illegal discrimination between those within an established class and others not so included.' " *State* v. *Delgado,* supra, 550; see *State* v. *Rollinson,* 203 Conn. 641, 658, 526 A.2d 1283 (1987).

The legislature has often decided as a matter of policy to create special exemptions for substance-abusing criminal defendants. With respect to § 21a-278, this court, construing its statutory predecessor, concluded that a defendant's status as a person who is not drug-dependent is not an essential element of the offense charged, but rather operates to exempt those who are drug-dependent from the operation of the statute. *State* v. *Januszewski,* 182 Conn. 142, 167, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Furthermore, General Statutes § 19a-387 (a)[17] provides that a court may, if it finds that

---

[16] In his pursuit of this equal protection claim, the defendant has relied on the fourteenth amendment to the United States constitution, and has not raised any independent argument under the parallel provision of the Connecticut constitution, article first, § 20.

[17] General Statues § 19a-387 (a) provides in relevant part: "(Formerly Sec. 19-498). COMMITMENT OF PERSON CONVICTED OF CRIME. INDETERMINATE

a person convicted of certain crimes is drug-dependent and that his crime was for the primary purpose of sustaining his drug dependence, sentence the person, as an alternative to the sentence specified for the crime, to "an indeterminate term not to exceed three years or the maximum term for the offense, whichever is the lesser, and, at any time within such indeterminate term *and without regard to any other provision of law regarding minimum term of confinement,* the commissioner of correction may release the convicted person so sentenced subject to such conditions as he may impose including, but not limited to, supervision by suitable authority." (Emphasis added.) In addition, General Statutes § 53a-7[18] provides that evidence of intoxication may be offered to negate an element of the crime charged, and thereby exempts a defendant from lia-

TERM. RELEASE ON DISCHARGE. COMMITMENT TO INPATIENT TREATMENT FACILITY. LIAISON BETWEEN AGENCIES DURING COMMITMENT. REPORT BY AND RESPONSIBILITY FOR NONHOSPITALIZED PERSON. UNAUTHORIZED DEPARTURE FROM HOSPITAL. (a) If the court by which a person has been convicted of a crime other than those arising under this chapter or those specified in section 19a-390 finds that the convicted person is drug dependent and that his violation was for the primary purpose of sustaining his drug dependence or was because he was drug dependent, it may in addition to imposing the penalties provided for the crime of which he was convicted issue an order committing the convicted person to the executive director of the Connecticut alcohol and drug abuse commission for a period not less than ninety days nor more than twenty-four months and shall suspend execution of the sentence during the period of such commitment. . . .

"As an alternative to the sentence specified for the crime, the court may sentence the person to the custody of the commissioner of correction for an indeterminate term not to exceed three years or the maximum term for the offense, whichever is the lesser, and, at any time within such indeterminate term and without regard to any other provision of law regarding minimum term of confinement, the commissioner of correction may release the convicted person so sentenced subject to such conditions as he may impose including, but not limited to, supervision by suitable authority."

[18] General Statutes § 53a-7 provides in relevant part: "EFFECT OF INTOXICATION. Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . ."

bility for specific intent crimes if he was intoxicated at the time of the crime. Another protection for drug-dependent defendants is provided by General Statutes § 19a-383,[19] which protects defendants from the use as evidence in any court, grand jury or administrative proceeding of information obtained during their treatment or rehabilitation for drug dependence.

The legislature may have decided to provide an exemption from the operation of § 21a-278, and not from § 21a-277, because the former statute provides an enhanced penalty and a mandatory minimum sentence for the possession of a larger quantity of drugs.[20] The legislature may rationally have concluded that such enhanced penalties were in tension with its goal of appropriate treatment for those who are drug-dependent. By exempting drug-dependent persons from prosecution under § 21a-278, and from its mandatory minimum sentence, the legislature empowered the court to exercise greater discretion in individual

---

[19] "[General Statutes] Sec. 19a-383. (Formerly Sec. 19-496d). EXAMINATION AND EVALUATION. TREATMENT. NONDISCLOSURE. A person seeking treatment or rehabilitation for drug dependence shall first be examined and evaluated by a medical practitioner. Such medical practitioner shall prescribe a proper course of treatment and medication, if needed and may prescribe a course of rehabilitation and may authorize another medical practitioner or hospital to provide the prescribed treatment or rehabilitation services. Treatment or rehabilitation services may be provided to a person individually or in a group. Any hospital providing or engaging in such treatment or rehabilitation shall not report or disclose to a law enforcement officer or agency the name of any person receiving or engaging in such treatment or rehabilitation; nor shall any person receiving or participating in such treatment or rehabilitation report or disclose the name of any other person engaged in or receiving such treatment or rehabilitation or that such program is in existence, to a law enforcement officer or agency. Such information shall not be admitted in evidence in any court, grand jury or administrative proceeding; provided any person engaged in or receiving such treatment or rehabilitation may authorize the disclosure of his name and the fact of his individual participation."

[20] Conviction pursuant to General Statutes § 21a-278, but not § 21a-277, requires that the perpetrator possessed a minimum of one ounce of the drug.

cases to determine the appropriate balance between treatment and punishment. Accordingly, we find no illegal discrimination in the legislature's determination to distinguish in this fashion between those who are drug-dependent and those who are not.

The defendant's claim that he was impermissibly subject to prosecution under either of two statutes for the same act is equally unpersuasive. So long as the state does not avail itself of overlapping criminal statutes in a manner that discriminates against any class, the state may legally choose to prosecute the defendant under either applicable statute. *State* v. *Chetcuti,* 173 Conn. 165, 168, 377 A.2d 263 (1977). " 'Absent a showing of a selection deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification . . . conscious selectivity in enforcement of the law is not in itself a constitutional violation.' " *State* v. *Delossantos,* 211 Conn. 258, 287, 559 A.2d 164 (1989), quoting *State* v. *Haskins,* 188 Conn. 432, 474, 450 A.2d 828 (1982).

There is error in part, the judgment as to the conspiracy charge is set aside and the case is remanded for a new trial on that charge.

In this opinion the other justices concurred.