STATE OF CONNECTICUT *v.* RUPERTO VINCENTE
(15227)

Dupont, C. J., and Foti and Heiman, Js.

Submitted on briefs December 2, 1996—officially released February 11, 1997

*Christopher P. DeMarco* filed a brief for the appellant (defendant).

*Michael Dearington*, state's attorney, and *Harry Weller* and *Elpedio Vitale*, assistant state's attorneys, filed a brief for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction rendered after the defendant's conditional plea of nolo contendere[1] to two counts of

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

Practice Book § 4003 provides: "(a) When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement, or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this subsection shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. The court shall not accept a nolo contendere plea

assault in the first degree, one count of conspiracy to commit assault in the first degree, and one count of criminal attempt to commit assault in the first degree. On appeal, the defendant asserts that the trial court improperly denied his motion to suppress[2] certain evi-

pursuant to this subsection where the denial of the motion to suppress would not have a significant impact upon the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere plea where the record available for review of the denial of the motion to suppress or motion to dismiss is inadequate for appellate review of the court's determination thereof.

"(b) With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw the conditional plea of guilty or nolo contendere after the case has been remanded to the trial court. A plea of guilty or nolo contendere under this subsection shall not constitute a waiver of nonjurisdictional defects in the criminal prosecution. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

[2] General Statutes § 54-41m provides: "Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the state of Connecticut, or of a political subdivision thereof, may move to suppress the contents of any intercepted wire communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted under the provisions of this chapter; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval. Such motion shall be made before the trial, hearing or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion, in which case such motion may be made at any time during the course of such trial, hearing or proceeding. If the motion is granted, the contents of the intercepted wire communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter and shall not be received in evidence in any such trial, hearing or proceeding. The panel, upon the filing of such motion by the aggrieved person, shall make available to the aggrieved person or his counsel for inspection the intercepted communication and evidence derived therefrom."

dence that he claimed resulted from telephone conversations intercepted in violation of the Connecticut wiretapping statutes, General Statutes § 54-41a et seq. We are not persuaded and affirm the judgment of the trial court.

It is alleged in count one of the information that the defendant conspired with a number of other persons, including Pedro Milan and other gang members, to commit assault in the first degree. In the second and third counts of the information, the defendant is accused of having aided and abetted in the commission of an assault in the first degree against Jose Garcia and Edwin Nunez. In the fourth count of the information, the defendant is accused of criminal attempt to commit assault in the first degree against Hector Vasquez. The conspiracy is alleged to have occurred in Waterbury or Meriden during April, 1992, and the assaults are alleged to have occurred in Meriden on April 26, 1992.

After a full evidentiary hearing on the defendant's motion to suppress, the trial court found the following facts. During the month of April, 1992, Milan was an inmate at the federal prison at Raybrook, New York. Milan had been incarcerated in a Pennsylvania state prison, as well as in another federal prison, before his transfer to Raybrook. When Milan was taken into the prison at Raybrook, he was advised that telephone calls made from the prison were monitored. This information was given to Milan in writing, and he signed a document that acknowledged the fact that telephone calls made from the prison were monitored and recorded. Additionally, a sign in both English and Spanish was located at each telephone in the prison, advising the person using the telephone that all calls were monitored and recorded.

The prison facility at Raybrook consisted of five housing units. Each unit had four telephones. The device

that monitored and recorded the telephone calls made by the inmates ran twenty-four hours a day and could record all twenty telephones simultaneously.

The monitoring system in place at the prison was a hotel-motel system. Any inmate who wanted to make an outside call would pick up one of the twenty telephones in the institution and place a collect call. The operators who placed the calls for the inmates were New York Telephone Company employees and not employees of the Federal Bureau of Prisons.

When an inmate picked up a telephone receiver, the recording started immediately, without regard to whether anyone was speaking. The telephone number called by an inmate was recorded when it was dialed. The recording could be retrieved by computer and transcribed. When an inmate hung up the telephone, the recording stopped.

When Milan was sent to the institution at Raybrook, Lieutenant Michael Cross, the special investigative supervisor at the prison, was notified that Milan was a high profile inmate and that Cross was required to monitor him. Milan's calls were monitored and recorded, and no effort was made to minimize either the recording or monitoring.

The trial court found that the defendant's motion to suppress was based solely on noncompliance with the Connecticut wiretapping statutes.[3] The trial court denied the defendant's motion to suppress. The court found that the Connecticut wiretapping statutes do not apply to this interception because it occurred in a federal prison in New York state, and the Connecticut wiretapping statutes have no extraterritorial effect.

The defendant, at oral argument in the trial court, expressly eschewed any constitutional privacy claim as

[3] See footnotes 2 and 4.

the basis for the motion to suppress.[4] Further, the trial court determined that, had it been called on to decide the privacy issue, it would have found that Milan consented to having his telephone calls from prison monitored and recorded.

I

As the defendant has suggested, we must determine as a threshold matter whether this appeal is properly before the court under General Statutes § 54-94a.[5] The statute limits appeals under a conditional plea of nolo contendere to those situations where a motion to suppress is predicated on an unreasonable search or seizure or on the involuntariness of a statement. The defendant claims that because his statements were recorded in violation of the Connecticut wiretapping statutes, there was an unreasonable search and seizure and § 54-94a applies.

We do not resolve this issue on that basis, however, but conclude that this appeal is properly before us under the provisions of Practice Book § 4003 (b).[6] "If, at any time before the close of evidence—in short, either before or after the commencement of trial—the court denies any motion of the defendant, including but not limited to a motion specified in subsection (a), the provisions of subsection (b) come into play. In that instance, in order for the defendant to secure appellate review of the ruling without going through a full trial,

---

[4] The lack of a constitutional basis for the motion is reflected in this colloquy between counsel and the court:

"The Court: Tell me, your motion is based solely upon noncompliance with the state statute?

"[Defense Counsel]: Yes.

"The Court: There are no other claims other than—

"[Defense Counsel]: I raise no constitutional right of privacy claim, Your Honor. I don't believe one is appropriate.

"The Court: That's what I wanted to be sure of. Thank you."

[5] See footnote 1.

[6] See footnote 1.

the following requirements apply: (1) the defendant must reserve in writing the right, on appeal from the judgment, to review of the adverse determination made by the trial court; (2) the motion [that yielded the adverse determination] must be specified in such written reservation; (3) the trial court must give its approval; (4) the ruling must have had a significant impact on the disposition of the case; and (5) there must be an adequate record for appellate review. Practice Book § 4003 (b)." (Internal quotation marks omitted.) *State* v. *Piorkowski*, 236 Conn. 388, 418, 672 A.2d 921 (1996). We conclude that the conditions have been met, and that this appeal is properly before us pursuant to Practice Book § 4003 (b).

## II

The defendant asserts that the trial court improperly determined that the Connecticut wiretapping statutes have no extraterritorial effect and thus do not apply to telephone calls that originate from a federal prison in New York state. We disagree.

We turn first to an examination of the Connecticut wiretapping statutes to determine whether they can be interpreted to regulate wiretap practices in other states. We conclude that the statutes regulate only practices within this state and do not apply to wire interceptions conducted outside the territorial limits of the state of Connecticut. General Statutes § 54-41b[7] permits "[t]he Chief State's Attorney or the state's attorney for the judicial district in which the interception is to be con-

---

[7] General Statutes § 54-41b provides: "The Chief State's Attorney or the state's attorney for the judicial district in which the interception is to be conducted may make application to a panel of judges for an order authorizing the interception of any wire communication by investigative officers having responsibility for the investigation of offenses as to which the application is made when such interception may provide evidence of the commission of offenses involving gambling, bribery, violations of section 53-395, violations of section 21a-277 or felonious crimes of violence."

ducted" to make application to a panel of judges for an authorization to conduct the interception of wire communications. See *State* v. *Grant*, 176 Conn. 17, 26, 404 A.2d 873 (1978). The panel of judges may authorize the interception of wire communications "within the state of Connecticut." See General Statutes § 54-41d.[8] Thus, it is clear that the Connecticut wiretapping statutes are designed to regulate the interception of wire communications within the state of Connecticut, and not to regulate the method that a sister state or the federal government may employ in regulating the interception of wire communications under their respective jurisdictions.

"To determine the intent of the legislature, we first consider whether the statutory language yields a plain and unambiguous resolution. . . . If the words are clear and unambiguous, it is assumed that [they] express the intention of the legislature . . . and we need inquire no further. . . . The words of a statute must be interpreted according to their ordinary meaning unless their context dictates otherwise." (Citations omitted; internal quotation marks omitted.) *State* v. *Mattioli*, 210 Conn. 573, 576, 556 A.2d 584 (1989).

The clear and unambiguous language of General Statutes § 54-41a et seq. leads us to conclude that the legislature did not intend an extraterritorial application of our wiretapping statutes. We conclude, therefore, that the trial court correctly determined that the Connecticut wiretapping statutes were inapplicable to a wire communication interception that occurred at a federal prison in New York state, and thus the trial court properly denied the motion to suppress.[9]

---

[8] General Statutes § 54-41d provides in pertinent part: "Upon such application the panel of judges, by unanimous vote, may enter an ex parte order authorizing the interception of wire communications within the state of Connecticut . . . . "

[9] Moreover, even if we were to conclude that under the provisions of our wiretapping statutes, the legislature intended to exercise control over the

The judgment is affirmed.

In this opinion the other judges concurred.

monitoring and recording of telephone communications from a federal prison in New York state, the Connecticut wiretapping statutes still would not apply to this interception. Our Supreme Court has held that "the [Connecticut] wiretapping statutes were intended to apply only to monitoring and recording done without the knowledge of either party to the conversation." *Washington* v. *Meachum*, 238 Conn. 692, 714, 680 A.2d 262 (1996); see also *State* v. *Grullon*, 212 Conn. 195, 209–11, 562 A.2d 481 (1989). Here, Milan clearly had knowledge of the monitoring and recording of the intercepted conversation. Milan signed a form when he entered the Raybrook federal prison acknowledging that any telephone calls he made from the prison would be monitored and recorded. In addition, there were signs above the prison telephone used by Milan advising him in English and Spanish that all calls made from that telephone were monitored and recorded.