STATE OF CONNECTICUT *v.* ROBERT SOMERVILLE
(13536)
(13550)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued February 7—decision released April 3, 1990

*C. Robert Satti, Sr.,* state's attorney, with whom was *Lawrence J. Tytla,* assistant state's attorney, for the appellant-appellee (state).

*Robert J. Sweeney,* special public defender, with whom, on the brief, was *Kathleen M. Harkins,* for the appellee-appellant (defendant).

PETERS, C. J. The principal issue in this case is whether General Statutes § 21a-278 (a),[1] the dependency-producing drug statute applicable to persons who are not drug-dependent, when viewed either as a statute imposing an indeterminate sentence or as a statute imposing a definite sentence, requires the imposition of a maximum term of life imprisonment upon conviction. A jury found the defendant, Robert Somerville, guilty of possession with intent to sell cocaine in a free-base form by a person who is not drug-dependent in violation of § 21a-278 (a).[2] The trial court thereupon sentenced him to a term of imprisonment of not less than thirteen nor more than twenty-six years. Having asserted at the sentencing hearing that the relevant

---

[1] General Statutes (Rev. to 1987) § 21a-278 (a), as amended by Public Acts 1987, No. 87-373, § 2, provides: "(Formerly Sec. 19-480a). PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION OR ADMINISTRATION BY NON-DRUG-DEPENDENT PERSON. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] In the second count of the substitute information, the state had charged the defendant with breach of peace in violation of General Statutes § 53a-181 (a) (2). The jury, however, acquitted the defendant of this charge.

statutory provisions required imposition of an indeterminate life sentence, the state, with the permission of the trial court, has appealed the trial court's refusal to impose the alleged mandatory maximum sentence. The defendant has also appealed, claiming that the trial court erred in refusing to render a judgment of acquittal because of evidentiary insufficiency and that improper remarks by the prosecutor during closing argument deprived the defendant of a fair trial.[3] Because the trial court failed to impose a definite sentence, we find error in part on the state's appeal. We find no error on the defendant's appeal. Accordingly, we remand the case to the trial court for resentencing.

The jury could reasonably have found the following facts. On March 9, 1988, the defendant and Christopher Bonapart were visiting Vanessa Marshall at her residence in New London. At that time, Marshall observed the defendant and Bonapart "doing business," i.e., exchanging money for small vials with blue caps that the defendant removed from a plastic bag he kept in his pocket. Later that evening, Joseph Wilson arrived at Marshall's residence, and subsequently got into an argument with the defendant, which escalated into a fight when Wilson threatened to call the police. As the defendant left the premises, he threw a clear plastic bag containing small vials with blue caps, identical to that he had kept in his pocket, into the rear yard of a neighboring house, near the stairs. The defendant then bent down near some garbage cans located at that same address.

Two police officers responded separately to Wilson's report of a disturbance in progress at the Marshall residence. Upon his arrival, the first officer observed Wilson moving around near the Marshall residence, and

---

[3] At oral argument, the defendant withdrew, for lack of an adequate record, a third claim of error alleging ineffective assistance of counsel.

the defendant and Bonapart, standing in front of the neighboring house. As a physical confrontation seemed imminent, the officer restrained Wilson and then secured him in the back of his vehicle. The defendant was similarly restrained in a different vehicle by the second officer, after that officer had performed a pat down search of the defendant. Because of information elicited from the various conversations with those on the scene, the officers asked the occupants of the neighboring house about their knowledge of the sale of drugs in the area.

The two officers subsequently proceeded to the rear porch area adjacent to the neighboring house. Lifting up a garbage can, they found, underneath, a clear plastic bag containing $599 in cash and 69 small vials with blue caps that later tested positive for crack cocaine. A subsequent search of the defendant failed to reveal any drugs or money on his person. The officers did, however, find a large amount of money on Bonapart and a small purse containing seven vials of crack cocaine in the diaper of Marshall's one year old child. Marshall first claimed, but later denied, that the defendant was the source of this cocaine. The discovery of the vials led to the arrests of the defendant, Bonapart and Marshall. The police arrested Wilson for breach of the peace.

I

We consider first the state's claim that the trial court erred when it sentenced the defendant to a term of imprisonment of not less than thirteen nor more than twenty-six years, rather than to a maximum term of life imprisonment. The state maintains that the court correctly interpreted § 21a-278 (a) as requiring the imposition of an indeterminate sentence, but that the statute mandates the enhanced penalty of a mandatory life sentence for those persons, trafficking in illegal drugs, who themselves are not drug-dependent.

During the pendency of the present appeals, we expressly held, in *State* v. *Delossantos,* 211 Conn. 258, 284, 559 A.2d 164, cert. denied, U.S. , 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989), that General Statutes § 53a-35a,[4] which instituted a definite sentencing scheme for *any* felony committed on or after July 1, 1981, "implicitly repealed the *indeterminate sentencing* aspect of § 21a-278 (a)." (Emphasis in original.) The state now urges us either to overturn *State* v. *Delossantos,* supra, or to hold, if a definite sentencing scheme is now mandated, that § 21a-278 (a) still requires the imposition of a maximum term of life imprisonment in the circumstances of this case. We find no merit in either of these contentions.

A

The state's argument that we should reconsider our holding in *State* v. *Delossantos,* supra, rests on its analysis of the statutory history of § 21a-278 (a). The state

---

[4] General Statutes § 53a-35a provides: "IMPRISONMENT FOR ANY FELONY COMMITTED ON OR AFTER JULY 1, 1981: DEFINITE SENTENCES; TERMS AUTHORIZED. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life imprisonment without the possibility of release unless a sentence of death is imposed in accordance with section 53a-46a; (2) for the class A felony of murder, a term not less than twenty-five years nor more than life; (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years; (4) for a class B felony, a term not less than one year nor more than twenty years, except that for a conviction under section 53a-55a, 53a-59 (a) (1), 53a-59a, 53a-70a, 53a-94a, 53a-101 (a) (1) or 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years; (5) for a class C felony, a term not less than one year nor more than ten years, except that for a conviction under section 53a-56a, the term shall be not less than three years nor more than ten years; (6) for a class D felony, a term not less than one year nor more than five years, except that for a conviction under section 53a-60b, the term shall be not less than two years nor more than five years, and for a conviction under section 53a-60c, the term shall be not less than three years nor more than five years; (7) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

maintains that the legislature manifested its intention to carve out an exception for indeterminate sentencing under § 21a-278 (a) by retaining existing sentencing language subsequent to the enactment of the definite sentencing statute, § 53a-35a.

Section 21a-278 (a) provides that any person convicted of possession with intent to sell one-half gram or more of cocaine in a free-base form "who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment." As the state notes, General Statutes § 19-480a (a), the predecessor statute to § 21a-278 (a), contained a sentencing provision identical to that currently set out in § 21a-278 (a), a sentencing provision that clearly contemplated an indeterminate sentencing scheme. See *Myers* v. *Manson,* 192 Conn. 383, 385, 472 A.2d 759 (1984). In 1980, however, "the legislature passed what is now General Statutes § 53a-35a, which became effective on July 1, 1981 . . . . This statute instituted definite sentencing and effectively eliminated parole in Connecticut." *State* v. *Dupree,* 196 Conn. 655, 659, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985).

Despite the legislative shift to definite sentencing adopted in 1980, and the publication of our decision in *State* v. *Dupree,* supra, in 1985, the legislature retained the indeterminate sentencing language of § 21a-278 (a) when it amended that statute in 1987. Public Acts 1987, No. 87-373, § 2.[5] The state urges us to infer that, in so doing, the legislature intended, sub silentio, to cre-

---

[5] Public Acts 1987, No. 87-373, § 2, merely amended General Statutes § 21a-278 (a) to make its provisions applicable to an aggregate weight of one-half gram or more of cocaine in a free-base form, and in no way addressed the penalty that should be applicable.

ate a statutory exception to § 53a-35a. For this reason, the state contends that we were mistaken in concluding, in *State* v. *Delossantos,* supra, 284, that there was an irreconcilable conflict between the sentencing provisions of §§ 21a-278 (a) and 53a-35a that had to be resolved in favor of requiring the imposition of a definite sentence. We disagree.

Although well established principles of statutory construction require us to ascertain and give effect to the apparent intent of the legislature; *State* v. *Grullon,* 212 Conn. 195, 199, 562 A.2d 481 (1989); *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987); "[i]t is also a rule of statutory construction that unless there is ambiguity in the language of a statute, there is no occasion to look to the legislative intent." *State* v. *Dupree,* supra, 660; *In re Petition of State's Attorney, Cook County, Illinois,* 179 Conn. 102, 107, 425 A.2d 588 (1979). A facial comparison of § 21a-278 (a) with § 53a-35a reveals the existence of a conflict between the former's provision requiring "a minimum term of not less than five years nor more than twenty years," and the latter's institution of a definite sentencing scheme. See *State* v. *Jenkins,* 198 Conn. 671, 680, 504 A.2d 1053 (1986); *State* v. *Dupree,* supra, 659. The irreconcilability of this conflict was the precise basis for our holding in *State* v. *Delossantos,* supra. We presumed, furthermore, that in enacting § 53a-35a, the legislature acted with the knowledge of existing relative statutes and with the intention of creating one consistent body of law; id., 283, and cases therein cited; and therefore would have expressly excepted § 21a-278 (a) from definite sentencing had it intended to accomplish such a result.

The state would have us draw precisely the opposite inference from the reenactment of § 21-278 (a) in 1987. We decline to do so for two reasons. First, principles of stare decisis require us to adhere to the precedent

set by *State* v. *Delossantos*, supra, unless there is a compelling reason to overrule it. *Ralston Purina Co.* v. *Board of Tax Review*, 203 Conn. 425, 439, 525 A.2d 91 (1987); *State* v. *Castonguay*, 194 Conn. 416, 435, 481 A.2d 56 (1984); *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 570, 409 A.2d 1020 (1979). Second, the state's construction of § 21a-278 (a) disregards the principle that penal statutes must be construed strictly against the state and in favor of the accused; *State* v. *Breton*, 212 Conn. 258, 269, 562 A.2d 1060 (1989); *State* v. *Whiteman*, 204 Conn. 98, 101, 526 A.2d 869 (1987); *State* v. *Edwards*, 201 Conn. 125, 132, 513 A.2d 669 (1986). This principle enjoins us to avoid imposing criminal liability where the legislature has not *expressly* so intended. *State* v. *Breton*, supra, 268–69; *State* v. *Grullon*, supra, 200; *State* v. *Hufford*, 205 Conn. 386, 392, 533 A.2d 866 (1987).

We are equally unpersuaded by the state's alternate argument, that § 53a-35a (7)[6] provides a statutory exception from definite sentences for unclassified felonies,[7] such as the narcotics offense of § 21a-278 (a). For unclassified felonies, such as § 21a-278 (a), § 53a-35a (7) incorporates by reference, as a definite sentence, "a term in accordance with the sentence specified in the section of the general statutes that defines the crime." We considered this precise issue in *State* v. *Delossantos*, supra, and concluded that the minimum and maximum

---

[6] General Statutes § 53a-35a (7) provides that "for an unclassified felony, a term [of imprisonment be imposed] in accordance with the sentence specified in the section of the general statutes that defines the crime."

[7] In *State* v. *Dupree*, 196 Conn. 655, 662, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985), we held, contrary to the state's assertion in the instant appeal, that the legislature's insertion of the penalty of life imprisonment directly into General Statutes § 53a-54d, our arson murder statute, "removed the arson murder statute from the ambit of General Statutes § 53a-54a (c), which punishes murder as a class A felony, and placed it squarely within the definition of an unclassified felony."

terms set by § 21a-278 (a) complied with the mandate of § 53a-35a (7) and that the phrase in § 21a-278 (a) referring to a minimum of "not more than twenty years" had been impliedly repealed by the enactment of § 53a-35a. We held that our authority to excise the inconsistent portion of a statute, if that portion is severable from the remainder of the statute, is analogous to our similar authority over a statute that is unconstitutional in part. *State* v. *Delossantos,* supra, 284; and see *Harper* v. *Tax Commissioner,* 199 Conn. 133, 141, 506 A.2d 93 (1986); *State* v. *Dupree,* supra, 660.[8] The state has presented no persuasive argument why we should not adhere to this ruling.

B

The conclusion that § 21a-278 (a) requires a court to impose a definite sentence leaves open the question of what the statutory prescription for that definite sentence may reasonably be construed to be. By its terms, § 21a-278 (a) authorizes a life sentence as the maximum term of imprisonment that may be imposed upon a person convicted of violating the statute.[9] The state asserts that imposition of the maximum penalty is not only permissible but is statutorily mandated for each and every

---

[8] The defendant conceded at oral argument that, given our determination in *State* v. *Delossantos,* 211 Conn. 258, 284, 559 A.2d 164, cert. denied, U.S. , 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989), that the indeterminate sentencing language is severable from the remaining statutory penalty provisions, General Statutes § 21a-278 (a) cannot be constitutionally attacked as void for vagueness. See *United States* v. *Batchelder,* 442 U.S. 114, 123, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979); *State* v. *Thompson,* 197 Conn. 67, 78–79, 495 A.2d 1054 (1985).

[9] Our remand for resentencing makes it unnecessary for us to consider whether, as the defendant urges, the imposition of a life sentence upon a person who is not drug-dependent, for trafficking in one-half gram of cocaine in free-base form would be unconstitutional either as cruel and unusual punishment under article first, § 8 of the Connecticut constitution and the eighth amendment to the United States constitution, or as violative of the guarantee of equal protection under the fourteenth amendment to the federal constitution.

such conviction, regardless of the particular circumstances or of mitigating factors surrounding any individual violation. In the context of a definite sentencing scheme, the state thus envisions that anyone sentenced in accordance with the penalty provisions of § 21a-278 (a) will necessarily receive a term of imprisonment of life to be suspended after a certain period of years, which term shall be not less than the statutory minimum. The defendant counters that, in compliance with the definite sentencing requirement of § 53a-35a, the proper construction of the remaining penalty provisions of § 21a-278 (a) is a definite sentence anywhere within the statutory range of five years to life. We agree with the defendant.

The well established principles that counsel narrow construction of a penal statute compel the adoption of the definite sentencing scheme allowing a trial court to impose a maximum sentence of less than life imprisonment. We impliedly endorsed such a construction of § 21a-278 (a) in *State* v. *Delossantos,* supra, 285, when we held that "the trial court complied with the definite sentencing requirement of § 53a-35a, as applied to § 21a-278 (a), by sentencing the defendant to a term of twenty-three years, execution suspended after fifteen years, and five years probation."

In its argument to the contrary, the state principally relies on the use of the word "shall" in § 21a-278 (a) as evidence of a legislative intention that the maximum term of life imprisonment is mandatory. We have indeed often held that the word "shall" imposes a mandatory statutory requirement in a criminal statute. *State* v. *Williams,* 205 Conn. 456, 477, 534 A.2d 230 (1987); *State* v. *Cook,* 183 Conn. 520, 522–23, 441 A.2d 41 (1981); *State* v. *Schaeffer,* 5 Conn. App. 378, 388, 498 A.2d 134 (1985). Nonetheless, we are unpersuaded that the legislature intended to make a life sentence mandatory when it described such a sentence as a max-

imum and coupled it with a statutory option for the imposition of a "minimum term of not less than five years." As we have noted above, in order to reconcile the penalty provisions of § 21a-278 (a) with the definite sentence requirement of § 53a-35a, § 21a-278 (a) now provides, in effect, that a person convicted under its auspices "shall be imprisoned for a minimum term of not less than five years . . . and, a maximum term of life imprisonment." Like other unclassified felonies, § 21a-278 (a) merely delineates the applicable statutory limits of the penalty within which the trial court must exercise its discretion to impose a definite sentence. See General Statutes § 21a-278 (b) ("for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years"); General Statutes § 53-21 ("shall be . . . imprisoned not more than ten years").

Moreover, the legislative history of § 21a-278 (a), to which the state has earlier called our attention, undermines the state's argument in this instance. The language of § 21a-278 (a) has, from the beginning, permitted a maximum term of life imprisonment that has never been thought to be mandatory. This same language was reenacted without change in 1987 by Public Acts 1987, No. 87-373, § 2. We discern no pressing reason to depart from the precedent established by this unbroken legislative history and conclude, accordingly, that the penalty language provided for in § 21a-278 (a) establishes only a statutory range within which the trial court may exercise its discretion to impose a definite sentence.

The record in this case makes it clear, however, that the trial court exercised its sentencing discretion without having had the benefit of our intervening decision in *State* v. *Delossantos,* supra. The indeterminate sentence it imposed, a term of imprisonment of not less

than thirteen nor more than twenty-six years, cannot be permitted to stand. We therefore remand for the imposition of a definite sentence in accordance with today's holding.

## II

The defendant's appeal preserves two issues for our review. The defendant challenges the sufficiency of the evidence to support his conviction and the propriety of remarks made by the prosecutor during closing argument. We find neither claim of error persuasive.

## A

We first address the defendant's claim of evidentiary insufficiency. At the close of the state's case, the defendant moved for a judgment of acquittal, on the ground that the state had adduced no evidence of his possession of the 69 vials of crack cocaine that were at issue. He claimed that there was no direct proof of his actual possession of the crack cocaine, and that the circumstantial evidence failed to prove his constructive possession beyond a reasonable doubt. When the trial court denied the defendant's motion, the defendant rested his case without presenting any evidence of his own. The defendant now renews this insufficiency claim on appeal. While we acknowledge that the evidence linking the crack cocaine to the defendant was largely circumstantial, we conclude nonetheless that it was sufficient to support his conviction.

" 'In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. "We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have con-

cluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.'' *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985), and cases there cited.' *State* v. *Rollinson,* 203 Conn. 641, 665–66, 526 A.2d 1283 (1987).'' *State* v. *Robinson,* 213 Conn. 243, 254, 567 A.2d 1173 (1989). ''So far as probative force is concerned, there is no legal distinction between direct and circumstantial evidence.'' *State* v. *Gaynor,* 182 Conn. 501, 506 n.3, 438 A.2d 749 (1980).

The facts underlying this claim of error are not in dispute; it is rather the resultant inferences drawn by the trier of fact that the defendant now challenges as improperly based on speculation and conjecture. See *State* v. *Gaynor,* supra, 503. It is clear that, at the time of his arrest, the defendant had on his person neither drugs nor a large amount of money commonly associated with such illegal dealings. The state, however, was not required to prove that the defendant had actual physical possession of the 69 vials of crack cocaine that the police officers found underneath the garbage can at the neighboring house. The state only had to prove that the defendant ''had exercised dominion and control over it and had knowledge of its presence and character.'' *State* v. *Reddick,* 207 Conn. 323, 328, 541 A.2d 1209 (1988); *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Williams,* 169 Conn. 322, 335, 363 A.2d 72 (1975); *State* v. *Parent,* 8 Conn. App. 469, 473, 513 A.2d 725 (1986). Nonetheless, ''[w]here [, as here,] the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or cir-

cumstances tending to buttress such an inference.' . . ." (Citations omitted.) *State* v. *Alfonso,* supra; *State* v. *Santiago,* 17 Conn. App. 273, 278, 552 A.2d 438 (1989).

Despite the defendant's argument to the contrary, "circumstances tending to buttress such an inference" of his guilt are to be found in the testimony of Marshall and Wilson. It should first be noted that Marshall observed the defendant and Bonapart, at her residence, "doing business," which she testified was the sale of crack cocaine contained in small vials with blue caps that the defendant would remove from a plastic bag that he kept in his pocket. Wilson's independent observations corroborated this testimony at trial. Marshall also testified that she saw the defendant throw this same plastic bag filled with small vials with blue caps near the rear stairs of the neighboring house, where the police subsequently found the crack vials at issue. Furthermore, Wilson testified that the defendant was bending down somewhere near the garbage can under which the illegal drugs were found.

It is no answer to this evidentiary showing to rely on inconsistencies in the stories told by the witnesses who offered this incriminating evidence.[10] It is equally

[10] The defendant argues first that Marshall's testimony is unreliable because she falsely informed the police that the defendant had procured the additional crack cocaine vials found in her infant's diaper, a statement which she later recanted at trial. The defendant next draws our attention to the seeming inconsistency between Wilson's assertion that the defendant bent down near the garbage can at the rear of the neighboring house and Marshall's conflicting testimony that, having seen the defendant throw the plastic bag of crack vials toward the stairs of the neighboring house, she subsequently never observed him go farther than a few steps into the front yard at the neighboring house. The defendant also highlights the seeming inconsistencies found in Wilson's testimony with respect to the amount of time Wilson actually spent at Marshall's residence on the day in question and thus his availability to observe the defendant's alleged drug transactions. He also questions Wilson's ability to observe the precise location of the garbage can by which the defendant was allegedly bending down.

unavailing that Marshall's status as a codefendant, as well as her clearly stated self-interest in testifying, and Wilson's earlier altercation with the defendant undermine the probative value of their respective testimony. These assertions all go to the weight that the trier of fact may properly assign to the testimony presented. As we have often noted, in assessing the sufficiency of the evidence to convict, we do not sit as a thirteenth juror assessing the credibility of the testimony given by witnesses for the state. See *State* v. *Robinson,* supra, 256; *State* v. *Reddick,* supra, 328; *State* v. *Crump,* 201 Conn. 489, 491, 518 A.2d 378 (1986); *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983); *State* v. *Gaynor,* supra, 504. From the evidence elicited at trial, we conclude that the jury reasonably could have concluded that the defendant was guilty of violating § 21a-278 (a) beyond a reasonable doubt.

## B

We turn finally to the defendant's claim that the prosecutor's improper remarks during closing argument deprived him of his constitutional right to a fair trial in contravention of article first, § 8 of the Connecticut constitution and the fourteenth amendment to the federal constitution.[11] Specifically, the defendant claims that the prosecutor improperly commented upon facts not in evidence,[12] and expressed his personal opinion as to the credibility of a key witness. Having

[11] As the defendant proffers no distinct analysis under the Connecticut constitution as pertains to his claim of prosecutorial misconduct, we note that the due process provisions of the United States and Connecticut constitutions generally have the same meaning and impose similar constitutional limitations. See *In re Dodson,* 214 Conn. 344, 362 n.15, 572 A.2d 328 (1990); *State* v. *Brigandi,* 186 Conn. 521, 542, 442 A.2d 927 (1982).

[12] This claim of prosecutorial misconduct is twofold: that the prosecutor reflected on the reasons why the residents of the neighboring house refused to testify at trial, thereby inciting the prejudices and emotions of the jury by appealing to similarly felt fears of reprisals; and that his remarks concerning the nonidentifiable fingerprints on the 69 crack cocaine vials amounted to his becoming a witness for the state.

conceded, as he must, that he failed properly to pre-serve these claims at trial, the defendant now seeks review under the "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Correctly identified, however, his unpreserved evidentiary claims of prosecutorial misconduct merely masquerade as constitutional claims, and therefore must be summarily dismissed. *State* v. *Golding,* 213 Conn. 233, 241, 567 A.2d 823 (1989).

While we do not deny that prosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fun-damental fairness of the trial itself; *State* v. *Williams,* 204 Conn. 523, 539, 529 A.2d 653 (1987); *State* v. *Pelle-tier,* 196 Conn. 32, 33–34, 490 A.2d 515 (1985); we have long held that *Evans* review of such a claim is unavail-able where the claimed misconduct was not blatantly egre-gious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated through-out the trial. *State* v. *Rodgers,* 207 Conn. 646, 654, 542 A.2d 1136 (1988); *State* v. *Williams,* supra, 537; *State* v. *Chace,* 199 Conn. 102, 107–108, 505 A.2d 712 (1986); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672–74, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986). Although certain remarks made by the prosecutor, from hindsight, may be deemed imprudent, such isolated and brief episodes as occurred here fail to implicate the denial of the defendant's constitutional right to due process. We decline, accordingly, to review these claims of error.

There is error in part on the state's appeal, the judg-ment is set aside insofar as it sentences the defendant to an indeterminate term of imprisonment and the case is remanded to the trial court for resentencing in accordance with this opinion; there is no error on the defendants' appeal.

In this opinion the other justices concurred.