STATE OF CONNECTICUT *v.* CARL NESMITH
(14257)

SHEA, CALLAHAN, GLASS, COVELLO and BERDON, Js.

Argued September 27—decision released December 17, 1991

*James N. Crane,* special public defender, with whom, on the brief, was *Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smriga,* assistant state's attorney, for the appellee (state).

GLASS, J. After a jury trial, the defendant appealed to the Appellate Court from a judgment of conviction of possession of narcotics in violation of General Stat-

utes § 21a-279 (a).[1] On appeal, he claimed that the trial court improperly refused to instruct the jury as to the doctrine of nonexclusive possession of the premises. The Appellate Court concluded that "the instructions as given were accurate and consistent with the evidence, and that the trial court was correct in refusing to give the requested charge." *State* v. *Nesmith,* 24 Conn. App. 158, 163, 586 A.2d 628 (1991). We granted certification limited to the following issue: "In the circumstances of this case, was the defendant entitled to have the trial court instruct the jury, in accordance with his request, on the doctrine of nonexclusive possession of the premises?" *State* v. *Nesmith,* 218 Conn. 904, 588 A.2d 1383 (1991). We affirm the judgment of the Appellate Court.

The state offered evidence to prove the following.[2] On May 5, 1989, four officers of the Bridgeport police department went to apartment 104 in building 31 of the Father Panik Village housing project in Bridgeport. The Bridgeport housing authority had confirmed that the apartment was vacant. The apartment was well known to the police as a place used for buying, selling and using drugs. There were no locks on the doors of

---

[1] The defendant was acquitted of the charge of possession with intent to sell a narcotic substance, in violation of General Statutes § 21a-278 (b), and convicted of the lesser included offense of possession of narcotics in violation of General Statutes § 21a-279 (a).

General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[2] Although the facts are fully set forth in the decision of the Appellate Court, *State* v. *Nesmith,* 24 Conn. App. 158, 586 A.2d 628 (1991), we relate those facts that are pertinent to the disposition of the certified issue.

the apartment. At approximately 7 p.m., the officers entered the open door of the apartment. Once inside, they observed between six and eleven persons in the front room. They also observed several empty glassine bags, vials and other common drug vessels on the floor, as well as shoe strings that are commonly applied as tourniquets by drug users, cookers that are used for boiling drugs into a liquid form, and lit candles. The apartment contained no furniture other than a sofa and a few other items that were used to sit on. Officer Joseph Sherbo observed in the hallway a man, later identified as the defendant, moving toward the back bedroom. Sherbo had been in the back bedroom before and knew it was an area used "for buying and using drugs." Sherbo followed the defendant into the room and, from the doorway, saw him walk toward the rear wall and throw a "light colored object" down to the concrete floor. Sherbo instructed the defendant to "freeze," searched him for weapons, and sent him to the front room to be guarded by the other police officers. Sherbo then examined the area where he had seen the defendant discard the light colored object and retrieved fifty-seven glassine envelopes and twelve plastic vials.[3] Sherbo returned to the front room, where the defendant was arrested along with a man whom another police officer had seen discarding drugs from his person. Later testing proved that some of the envelopes retrieved by Sherbo contained heroin and that the vials contained cocaine.[4]

The defendant's testimony directly contradicted the state's version of the facts. According to the defendant, he was waiting for a friend in the hallway outside

[3] Sherbo testified that there was "no question in his mind" that the glassine envelopes had been thrown to the floor by the defendant. He was not sure, however, that the defendant had discarded the plastic vials because he did not hear them strike the concrete floor.

[4] The foregoing version of the facts is based primarily on the testimony of Sherbo.

apartment 104 when four Bridgeport police officers entered the building. A police officer grabbed the defendant and brought him inside the apartment. The defendant was then instructed to sit in a circle on the floor of the front room with approximately eleven other detainees. The defendant observed the man next to him drop three or four blue glassine envelopes on the floor.[5]

---

[5] Pertinent testimony of the defendant is as follows:

Direct examination by Anthony Fusco, special public defender:

"Q. I see. Okay. Now did you see anything on the floor other than these people?

"A. No.

"Q. Were there any narcotics on the floor?

"A. No, I didn't. The guy that was standing next to me—was sitting next to me, he dropped some bags next to me and they seen it and they just picked them up, took them and he was one of the last ones to go and they let him go. They picked up the drugs and let him go.

"Q. How do you know they were drugs?

"A. It was about three or four of them, those blue bags.

"Q. Did you say anything to any of the officers at this time?

"A. I was mad because I'm wondering what was I being arrested, because I was the first one being handcuffed. I was wondering why they was arresting me. I guess I started cussing at him because he said you're not going anywhere."

Cross-examination by John Smriga, assistant state's attorney:

"Q. And you say at some point you saw somebody throw some drugs down on the floor?

"A. The guy that was sitting next to me.

"Q. What room was that in?

"A. In the living room.

"Q. And you saw him throw the drugs on the floor; correct?

"A. Yeah, because he tried to give them to me and I told him it wasn't mine.

"Q. He threw—

"A. He threw it next to me. When he said it wasn't his, I said it wasn't mine, the police—

"Q. I'm sorry?

"A. The police said he saw who threw them down.

"Q. Did you testify before that they let that man go?

"A. Yes.

"Q. And it's your testimony that the police saw the man throw the drugs down and they arrested another guy in the room for those drugs; is that what you are saying?

According to the defendant, the police observed the man's actions and removed the bags from the floor. A short time later, the defendant was "patted down," handcuffed and arrested along with one other person.[6] It is undisputed that no drugs were found on the person of the defendant.

The certified question presented is whether, in the circumstances of this case, the defendant was entitled to have the trial court instruct the jury, in accordance with his request, on the doctrine of nonexclusive possession of the premises. We conclude that the evidence did not warrant a jury instruction on the doctrine of nonexclusive possession of the premises, and, therefore, we answer the certified question in the negative.

" 'When we are reviewing a trial court's failure to charge as requested, "we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support.". . .' *State* v. *Fuller,* 199 Conn. 273, 275, 506 A.2d 556 (1986)." (Citations omitted.) *State* v. *Havican,* 213 Conn. 593, 595, 569 A.2d 1089 (1990). Furthermore, " '[a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . .' *State* v. *Casey,* 201 Conn. 174, 178, 513 A.2d 1183 (1986)." (Citations omitted.) *State* v. *Jennings,* 216 Conn. 647, 663, 583 A.2d 915 (1990). The

"A. They arrested me.

"Q. All right. They arrested you. But did you testify earlier that the police did arrest someone else; correct?

"A. Right.

"Q. But not the guy that threw the drugs down; correct?

"A. No.

"Q. That's your testimony to this jury.

"A. Right."

[6] The defendant testified that the other arrestee was not the man whom he had observed discard the glassine envelopes. See footnote 5, supra.

defendant requested that the court instruct the jury on the doctrine of nonexclusive possession of the premises.[7] See *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985). The trial court refused to give the requested instruction.[8]

The defendant's claim that he was entitled to an instruction on the doctrine of nonexclusive possession of the premises is based primarily on *State* v. *Alfonso,* supra, 633, where we stated: "Where the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' *Evans* v. *United States,* 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 901, 79 S. Ct. 221, 3 L. Ed. 2d 150 (1958); see generally annot., 56 A.L.R.3d 948 (1974)." While the jury instruction on nonexclusive possession of the premises requested by the defendant is accurate as an abstract principle of law; see footnote 7, supra; it is inapplicable to the facts of the present case. If we adopt the version of the facts most favorable to the defendant that the evidence

---

[7] The relevant portion of the defendant's request to charge read as follows: "Where Mr. Nesmith is not in *exclusive* possession of the place, here the apartment, where the heroin and cocaine is found, you may not conclude that he knew of its presence and that he had control of them, unless he made some incriminating statement, or unless there are some other circumstances which tend to support a conclusion or buttress such an inference. *State* v. *Hill,* 201 Conn. 505, 514–16 [523 A.2d 1252] (1986); *State* v. *Alfonso,* 195 Conn. 624, 633 [490 A.2d 75] (1985); Devit & Blackmar, Federal Jury Practice & Instruction, Sections 16.07, pp. 512–13 (3rd Ed. West 1977); Borden & Orland, 5 Connecticut Practice Criminal Jury Instructions, Sections 15.2, 15.3, pp. 400–402, 410–13." The charge as requested fails to conform with the requirement of Practice Book § 854 that a request to charge contain "the evidence to which the proposition [of law] would apply." We nonetheless review the merits of the defendant's claim.

[8] We uphold this ruling on grounds distinct from those relied upon by the trial court and therefore decline to address the trial court's rationale.

would reasonably support, as we must, the jury could have concluded that another detainee discarded the drugs on the floor in the front room, next to the defendant. The evidence thus established possession of the narcotics without requiring that the jury draw an inference based solely on the defendant's presence on the premises. Under the circumstances of this case, the trial court properly refused to give an instruction on the doctrine of nonexclusive possession of the premises.[9]

In *State* v. *Alfonso,* supra, 627, police searched Alfonso's apartment when he and a visitor were present. The police discovered cocaine in the living room and marihuana in the kitchen. Alfonso's two roommates were not present at the time of the search. At the time of his arrest, Alfonso admitted ownership of the cocaine. Neither Alfonso nor his roommates nor the visitor admitted ownership of the marihuana. Id.,

[9] At the time of his arrest, the defendant had on his person neither drugs nor a large amount of money commonly associated with illegal drug transactions. The state's evidence showed that the defendant was seen discarding from his person an object that was later found to be narcotics. The defendant testified that the police had observed another detainee discard several glassine envelopes on the floor next to the defendant and subsequently had arrested the defendant. The trial court instructed the jury on both actual and constructive possession as follows: "Possession as used in the statute means to have physical possession or otherwise to exercise dominion or control over tangible property. That is, the State must prove beyond a reasonable doubt that the defendant exercised dominion or control over the cocaine and/or heroin, had knowledge of its presence and had knowledge of its character. Possession may be actual or constructive. Possession, whether it is actual or constructive, may be proven by either direct or circumstantial evidence. Keep in mind that possession of cocaine and/or heroin here and not ownership is all that is required. Actual possession is established if it is shown that the defendant had actual physical possession. Constructive possession is established if it is shown that the defendant exercised dominion and control over the cocaine and/or the heroin, and had actual knowledge of its presence." See, e.g., *State* v. *Somerville,* 214 Conn. 378, 390, 572 A.2d 944 (1990); *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985). Finally, the trial court gave the jury examples of constructive possession similar to those we upheld in *State* v. *Williams,* 169 Conn. 322, 334–36, 363 A.2d 72 (1975).

634. We concluded that Alfonso's admission provided an adequate evidentiary basis for his conviction for possession of cocaine. We reversed Alfonso's conviction for possession of marihuana, however, on the basis that "the state offered no supporting evidence that would have justified an inference that the defendant possessed the marihuana." Id., 634–35. *Alfonso* thus established the principle that a jury may not infer possession of illegal drugs solely from a person's presence on premises where drugs are found, if the person is not in exclusive possession of such premises.[10]

In the present case, the apartment in which the narcotics were found was unoccupied on May 5, 1989, and, thus, not in the exclusive possession of anyone present at the time the Bridgeport police entered. The defendant testified that the police observed another detainee drop several glassine envelopes on the floor in the front room next to the defendant and then arrested the defendant. According to the state's evidence, the defendant was seen throwing an object on the floor in a back bedroom where no one else was present and where narcotics were subsequently found. Neither version of the evidence, viewed in the light most favor-

[10] In *State* v. *Alfonso,* 195 Conn. 624, 490 A.2d 75 (1985), we adopted the principle enunciated in *Evans* v. *United States,* 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 901, 79 S. Ct. 221, 3 L. Ed. 2d 150 (1958). In *Evans,* the defendant was a frequent visitor on premises leased by another person. Id., 127–28. Marihuana was found under a carpet when only the defendant and the lessee were present. Id. Although the defendant did not have exclusive possession of the premises, the court affirmed his conviction based on his statement substantiating the lessee's disclaimer of ownership of the drugs. Id., 128–29. In *Alfonso* and subsequent Connecticut cases, the principle articulated in *Evans* v. *United States,* supra, has been applied to claims of evidentiary insufficiency where a defendant convicted of narcotics possession was not in exclusive possession of the premises. See, e.g., *State* v. *Somerville,* 214 Conn. 378, 390–91, 572 A.2d 944 (1990); *In re Benjamin C.,* 22 Conn. App. 458, 461, 577 A.2d 1117 (1990); *State* v. *Brunori,* 22 Conn. App. 431, 436, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1991); *State* v. *Williams,* 12 Conn. App. 225, 235, 530 A.2d 627 (1987).

able to the defendant, provides a basis for a charge on the doctrine of nonexclusive possession of the premises because each identifies the person discarding the drugs. Unlike the jury in *State* v. *Alfonso,* supra, 633–35, the jury in the present case was not required to draw an inference concerning possession of the narcotics based solely on the defendant's nonexclusive possession of the premises. Here, the conflicting stories of the defendant and the state's witnesses both identified a specific person in possession of the drugs: the defendant, who was observed discarding an object later retrieved and identified as narcotics, or another detainee, who, according to the defendant, was observed discarding several glassine envelopes on the floor next to the defendant. The jury, as factfinder, was entitled to disbelieve the defendant's testimony. See *State* v. *Martin,* 189 Conn. 1, 9, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983); *State* v. *Spates,* 176 Conn. 227, 238, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979).[11] Under the circumstances of this case, the trial court properly refused to give the defendant's requested instruction concerning the doctrine of nonexclusive possession of the premises.

---

[11] We acknowledge the argument made by the dissent that the defendant was entitled to a jury instruction on the nonexclusive possession of the premises because the defendant did not have exclusive possession of the apartment where the narcotics were found and the narcotics were not found on the defendant's person. The rule of law invoked by the defendant in support of the requested instruction; *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); was designed to prevent a jury from inferring a defendant's possession of narcotics *solely* from the defendant's nonexclusive possession of the premises where the narcotics are found. In the present case, there was no risk that the jury would infer the defendant's possession of the drugs from the mere fact that he was in nonexclusive possession of the premises because the evidence established that either the defendant or another detainee identified by the defendant discarded the drugs. The rationale behind the rule set forth in *Alfonso* is, therefore, inapplicable to the present case.

The judgment of the Appellate Court is affirmed.

In this opinion SHEA, CALLAHAN and COVELLO, Js., concurred.

BERDON, J., dissenting. The sole issue presented on appeal from the Appellate Court is whether the trial court, in this prosecution for the illegal possession of narcotics with intent to sell, should have instructed the jury on the doctrine of "non-exclusive possession of the premises" in accordance with the defendant's request to charge.[1] The jury returned a verdict of guilty of the lesser included crime of illegal possession of narcotics and the defendant was sentenced to the maximum term of seven years. I find that the instruction should have been given, and would order a new trial on the illegal possession of narcotics.

I will not reiterate the detailed facts set forth in the majority opinion which the jury could have found. Nevertheless, some of the evidence will be repeated as it specifically relates to this issue.

The state was required to prove for conviction the element that the defendant had "possession" of the narcotics. General Statutes § 21a-279 (a).[2] Such possession may be actual or constructive. *State* v. *Williams,* 169

---

[1] The defendant submitted in a timely manner the following request to charge: "In this connection I must explain the rule of law known as the doctrine of non-exclusive possession. That rule is this:

"Where Mr. Nesmith is not in *exclusive* possession of the place, here the apartment, where the heroin and cocaine is found, you may not conclude that he knew of its presence and that he had control of them, unless he made some incriminating statement, or unless there are some other circumstances which tend to support a conclusion or buttress such an inference. *State* v. *Hill,* 201 Conn. 505, 514–16 [523 A.2d 1252] (1986); *State* v. *Alfonso,* 195 Conn. 624, 633 [490 A.2d 75] (1985); Devit & Blackmar, Federal Jury Practice & Instruction, Sections 16.07, pp. 512–13 (3rd Ed. West 1977); Borden & Orland, 5 Connecticut Practice Criminal Jury Instructions, Sections 15.2, 15.3, pp. 400–402, 410–13."

[2] See footnote 1 of the majority opinion.

Conn. 322, 335, 363 A.2d 72 (1975). Constructive possession is when the defendant knows of the character of the substance, knows of its presence and exercises dominion and control over it. *State* v. *Somerville,* 214 Conn. 378, 390, 572 A.2d 944 (1990). In a case of constructive possession of the narcotics, the rule is "[w]here the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' *Evans* v. *United States,* 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 901, 79 S. Ct. 221, 3 L. Ed. 2d 150 (1958); see generally annot., 56 A.L.R.3d 948 (1974)." *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985).

" 'A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . .' " *State* v. *Allen,* 216 Conn. 367, 386–87, 579 A.2d 1066 (1990), quoting *State* v. *Casey,* 201 Conn. 174, 178, 513 A.2d 1183 (1986). Accordingly, for the defendant to have been entitled to the "non-exclusive premises" instruction, there must have been evidence upon which the jury could find that (1) the defendant did not have exclusive possession of the premises where the narcotics were found, and (2) the state relied upon the defendant having constructive possession of the narcotics because they were not found on the person of the defendant.

The first requirement that the defendant did not have exclusive possession of the premises has been met. Although the Appellate Court characterized this case as "not a situation of nonexclusivity" of the premises where the narcotics were found; *State* v. *Nesmith,* 24 Conn. App. 158, 162, 586 A.2d 628 (1991); the majority

of this court concedes that the premises including the back room were not in the exclusive possession of the defendant. Indeed, the apartment was well known to the police as a "shooting gallery" for narcotics, there were no locks on the doors, Bridgeport housing authority, the owner of the building in which the apartment was located, confirmed that it was vacant, and, at the time of the incident, there were between six and eleven persons in the front room.

The second requirement that the narcotics were not in the actual possession of the defendant has also been met. The state's version of the facts confirms this and the trial judge specifically charged the jury on constructive possession.[3] Thus, the defendant was entitled to the charge.[4]

---

[3] The court instructed the jury on constructive possession as follows: "Possession may be actual or constructive. Possession, whether it is actual or constructive, may be proven by either direct or circumstantial evidence. Keep in mind that possession of cocaine and/or heroin here and not ownership is all that is required.

"Actual possession is established if it is shown that the defendant had actual physical possession. Constructive possession is established if it is shown that the defendant exercised dominion and control over the cocaine and/or the heroin and had actual knowledge of its presence. Remember that constructive possession requires a showing of two things: Control and knowledge.

"A simple example of constructive possession which is by no means intended as an exclusive example is that for instance, when I arrived here in the courthouse this morning, I came in carrying my briefcase. That briefcase was in my actual possession as I carried it from my car to my chambers. Although I did not carry it here into the courtroom with me, it is still in my constructive possession. It is my property. It is located in my chambers and I continue to exercise dominion and control over it."

[4] An example of a jury charge on nonexclusive possession of the premises is as follows: "Whether the defendant had possession of the substance in this case is a question of fact for you to decide, and you may, as I have told you, draw reasonable and logical inferences from the evidence.

"(In this connection, there is another rule of law of which you must be aware. That rule is this: Where the defendant is not in *exclusive* possession of the premises where the narcotics are found, you may not infer that he knew of their presence and that he had control of them, unless he made

The majority seems to justify the refusal to give the charge under either the state's or the defendant's version "because each [version] identifies the person discarding the drugs." In other words, it is their claim that when there is evidence in which to draw an inference that the narcotics were in the possession of someone, the defendant would no longer have the right to the jury instruction. That sets the rule on its head. First, the only way it could be determined under either scenario that the narcotics came from the possession of the person is by drawing an inference. As the majority points out, "[i]t is undisputed that no drugs were found on the person of the defendant." The rule, however, was designed to prevent the drawing of such an inference unless there were "other incriminating statements or circumstances tending to buttress such an inference." Second, as pointed out below, the statements or circumstances that would take it out of the rule and allow for the drawing of such an inference were factual determinations for the *jury* to make and not for the trial court, the Appellate Court or this court.

Third, the majority assumes that the jury was required to believe either the state's version or the defendant's version, but that is not the case. The jury

some incriminating statement, or unless there are some other circumstances which tend to support such an inference.

"(Therefore, if you find that the defendant *was not* in exclusive possession of the premises where the narcotics were found, in order to infer that he knew of their presence, and that he was in control of them, you must also find that he made an incriminating statement or that there are other circumstances which tend to support that inference.

"(If, however, you find, from all the facts and circumstances, that the defendant *was* in exclusive possession of the premises where the narcotics were found, you may also infer that he knew of their presence there and that he had control of them. In that situation, in order to infer that he knew of their presence and that he was in control of them, you do not have to find that he made some incriminating statement or that there are other circumstances which support that inference.)" (Emphasis in original.) 5 Connecticut Practice, D. Borden & L. Orland, Connecticut Criminal Jury Instructions (1986) § 15.2.

had a right to determine whether the state's witness had been telling the truth in whole, or in part, or whether the witness had been merely mistaken. *State v. Alfonso*, supra, 633–34. For example, it was for the jury to determine whether Officer Joseph Sherbo had been in fact telling the truth when he had testified that he had seen the defendant throw a "light colored object" against the concrete wall. It was also for the jury to determine whether the glassine envelopes Sherbo had found containing the heroin were in fact what the defendant had thrown down in this vacant apartment. It is conceivable that the jury could have determined that the drugs had not come from the person of the defendant, but concluded that he had possession on the basis of the trial court's instructions on constructive possession.

Finally, the defendant was entitled to the instructions because he had also been charged with possession of cocaine, which had been found only in the plastic vials on the floor of the back bedroom.[5] Sherbo had conceded that it was possible that these vials had not been thrown there by the defendant because when Sherbo had seen the defendant drop the object against the concrete wall, he had not heard a sound. Thus, the defendant's only connection to the cocaine had been his presence in the back room where the vials had been found. Because of this alone, the defendant was entitled to the jury instruction on nonexclusive possession of the premises, even under the majority's application of the rule. It is clear that a defendant is " ' " 'entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . .' " ' " *State* v. *Havi-*

---

[5] The substitute information charged that "at or about 7:15 p.m. at Apartment 104, Building 31, Father Panik Village, Bridgeport, [the defendant] did unlawfully possess . . . a certain narcotic substance, to wit: Heroin and *Cocaine* . . . ." (Emphasis added.)

*can,* 213 Conn. 593, 597, 569 A.2d 1089 (1990), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956).

The majority attempts to distinguish *State* v. *Alfonso,* supra. *Alfonso* involved a determination of whether "the evidence adduced at trial was insufficient to support a finding of guilty beyond a reasonable doubt." Id., 633. In order to make that determination, this court applied the "non-exclusive possession of the premises" rule. The majority relies upon the statement in *State* v. *Alfonso,* supra, 634–35, that "the state offered no supporting evidence that would have justified an inference that the defendant possessed the marihuana." This statement in *Alfonso,* however, had to do with a determination of whether there had been "other incriminating circumstances tending to buttress such an inference" that would have allowed a conviction for possession of narcotics when the defendant had not been in exclusive possession of the premises and the state could have proven only constructive possession of the narcotics.

In the present case, we are considering whether the jury instruction should have been given and not whether the substantive rule should be applied in order to determine the sufficiency of the evidence. If the instruction on the rule of the nonexclusive possession of the premises had been given, surely, the jury could have reasonably drawn an inference of possession of the narcotics because it could reasonably have found that the actions of the defendant constituted "other incriminating circumstances tending to buttress such an inference." That, however, is a jury issue to be determined only after it had the guidance of an instruction on the law of nonexclusive possession of the premises.

The failure to give the nonexclusive possession instruction, combined with the court's instruction on

constructive possession and the concession that the defendant did not have the exclusive possession of the premises where the narcotics were found, makes it reasonably probable that the error was prejudicial. *State v. Vilalastra,* 207 Conn. 35, 47, 540 A.2d 42 (1988).

Accordingly, I respectfully dissent.